**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X   Case No.   1:23-cv-1239 (MAD/DJS)

DOREEN NARINE,

**COMPLAINT**

Plaintiff,                **PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

- against -

CENTERS FOR CARE LLC,

and

FULTON OPERATIONS ASSOCIATES LLC d/b/a
FULTON CENTER FOR REHABILITATION AND
NURSING,

Defendants.

-------------------------------------------------------------------X

Plaintiff DOREEN NARINE ("Plaintiff") by her attorneys, Phillips & Associates
Attorneys at Law, PLLC, hereby complains of the Defendants, upon personal knowledge, as well
as information and belief, by alleging and averring as follows:

## NATURE OF THE CASE

1.   Plaintiff brings this action alleging that Defendants have violated Title VII of the Civil
Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII"), 42 U.S.C. 1981 ("Section
1981"), and the New York State Human Rights Law, the New York State Executive Law,
§§ 296 *et seq.* ("NYSHRL") and seeks damages, as well as injunctive and declaratory
relief, to redress the injuries she has suffered as a result of being discriminated on the basis
of her race, national origin, and sex and being retaliated against by her employers for
complaining of workplace discrimination.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2.    Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3.    The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as the acts complained of occurred within the Northern District of New York.

5.    By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 24, 2022; (b) receiving a Notice of Right to Sue from the EEOC on July 7, 2022; and (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC. A copy of the Notice of Right to Sue is annexed hereto as **"Exhibit A".**

## PARTIES

6.    At all relevant times, Plaintiff was a resident of the State of New York and lived in Fulton County.

7.    Plaintiff is a 49-year-old Asian woman of Guyanese and Indian descent.

8.    Plaintiff was born in Guyana in June 1972 and became an American citizen circa 1992.

9.    Defendant FULTON OPERATIONS ASSOCIATES ("FULTON") is a domestic limited liability company licensed to do business in New York.

10.   Defendant FULTON operates the FULTON CENTER FOR REHABILITATION AND NURSING ("Facility"), located at 847 County Hwy 122, Gloversville, NY 12078.

11.   Facility is a rehabilitation facility that provides long-term and short-term medical care.

12.   Defendant CENTERS FOR CARE LLC is a domestic limited liability company licensed

2

to do business in New York.

13.    CENTERS FOR CARE LLC is a network of rehabilitation facilities throughout New York, New Jersey, and Connecticut, and maintains its principal place of business at 4770 White Plains Road, Bronx, NY 10470.

14.    CENTERS FOR CARE LLC is the parent company that operates and oversees the Facility and its operating company FULTON.

15.    Defendant CENTERS FOR CARE LLC has more than 15 employees.

16.    Defendant FULTON has more than 15 employees.

17.    Defendants FULTON and CENTERS FOR CARE LLC collectively operate the Facility.

18.    Defendants FULTON AND CENTERS FOR CARE LLC determined policies, procedures, and conditions of employment which directly affected Plaintiff's working conditions that led to her termination.

19.    Defendants FULTON and CENTERS FOR CARE LLC are collectively referred to as "Defendants."

20.    At all relevant times, Plaintiff was an employee of Defendants, working at the Facility.

## MATERIAL FACTS

21.    On or about October 2020, Plaintiff was hired by non-party staffing agency Regional Care Network LLC ("Regional Care Network") and was placed at a series of positions including healthcare facilities in Rhode Island and Schenectady, New York.

22.    On or about November 9, 2021, non-party Regional Care Network placed Plaintiff at the Facility.

23.    Plaintiff was employed as a Dietary Aide and her primary duties were carried out in the Facility's kitchen, and involved setting up trays for meals and washing dishes.

24.    Plaintiff worked approximately 81.5 hours/week and her salary was $20/hour.

25.    Plaintiff performed her job competently.

26.    As the facility was short-staffed, Plaintiff expected to stay in this position.

27.    Director Karen Miller ("Miller") had also praised Plaintiff and expressed that she hoped
       Plaintiff would remain at the Facility.

28.    Miller was Plaintiff's supervisor and had the authority to hire, fire or affect the terms and
       conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the
       same.

29.    Plaintiff observed that she was the only employee that was of Asian, Guyanese, or Indian
       descent at the Facility. Most of the other employees in the kitchen were Caucasian.

**Hostile Work Environment**

30.    On or about December 30, 2021, Plaintiff's coworker Don Bevington, ("Bevington") began
       a campaign of harassment, which included threats of termination and untrue rumors about
       Plaintiff's job performance.

31.    For instance, on or around January 6, 2022, Bevington falsely accused Plaintiff of always
       being on break and "not doing anything" during her shift.

32.    On another occasion, Bevington unreasonably yelled at Plaintiff to punch out, as her shift
       had just ended, insinuating that Plaintiff was attempting to steal time.

33.    On a different day, Bevington threatened to have Plaintiff transferred to the Schenectady
       Center and said, in sum and substance, "I guarantee you will be going back there."

34.    Bevington also sowed distrust among Plaintiff's coworkers by spreading false rumors that
       Plaintiff had caused two other employees to resign.

35.    Bevington did not berate and harass Plaintiff's coworkers, who were all Caucasian, in the

same hostile and intimidating manner.

36.     Bevington's hostile, harassing conduct arose from animus toward Plaintiff because she was

of Asian, Guyanese, and Indian descent.

**Complaints of Harassment**

37.     On or about January 10th, 2021, Plaintiff complained to Miller about Bevington's

harassment, and how the harassment was motivated by her race and national origin.

38.     Miller was dismissive of Plaintiff's allegations, insisting that Bevington was not racist.

39.     Still, Miller instructed Plaintiff to send a formal written complaint.

40.     On or about January 10th, 2021, Plaintiff sent a formal written complaint of a hostile work

environment to Miller and HR Rep Jenna (LNU) ("Jenna") detailing Bevington's

harassment.

41.     Defendants never contacted Plaintiff for a follow-up interview to address her complaint.

42.     Plaintiff is unaware whether an investigation took place.

43.     In light of Defendants' failure to take action to address the workplace harassment, Plaintiff

became increasingly stressed by the work environment.

44.     Bevington's harassment continued unabated.

45.     Plaintiff's complaints also led to additional harassment and increased scrutiny from other

supervisors in the workplace.

**Disparate Treatment**

46.      While working at Fulton, Plaintiff became friends with a co-worker, Nicholas Blanchard

("Blanchard").

47.     Blanchard is a thirty-one-year-old Caucasian man who also holds a Dietary Aide position at

the Facility.

48.     On or about December 1, 2021, Plaintiff and Blanchard became romantically involved.

49.     Several co-workers working in the kitchen, all Caucasian, had romantic or sexual relationships as well that were known.  Upon information and belief, those individuals were not harassed or reprimanded for the relationships.

50.     Plaintiff is not aware of, nor has she ever seen a policy that prohibits workplace romantic relationships.

51.     On or about December 20th, 2021, Administrator John Balin ("Balin") called Plaintiff, and Blanchard into his office. Miller, and Jenna were also present.

52.     Balin had the authority to hire, fire or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

53.     At the meeting, Balin inquired as to the relationship between Plaintiff and Blanchard.

54.     Balin instructed Plaintiff and Blanchard that any romantic interactions between them should only take place off the premises.

55.     During the meeting, Balin stated that Plaintiff was verbally warned for her relationship with Blanchard.

56.     During the meeting, Blanchard was not told that he was being disciplined for the relationship.

57.     On or about January 9th, 2022, Balin called only Plaintiff into his office to discuss an alleged video that was taken of Plaintiff and Blanchard sitting in an office chatting during break time. Balin stated that he saw Blanchard's hand resting on Plaintiff's thigh.

58.     Balin chastised Plaintiff for having a romantic relationship with Blanchard, despite his warning to not do so.

59.     Balin formally reprimanded Plaintiff and provided her with a second disciplinary warning because of the video.

60. On or about March 22, 2022, Balin again called only Plaintiff into his office for a meeting. Balin reprimanded her for taking breaks with Blanchard.

61. Balin stated in sum and substance, **"You are a woman, and you should care what people think of you" and "You should respect yourself."**

62. Balin stated that he wanted to fire Plaintiff because of her relationship with Blanchard, but Miller told him that Plaintiff was a good worker.

63. On or about March 24, 2022, Plaintiff and Blanchard walked out of the Facility together and stood outside under an umbrella.

64. When Plaintiff returned inside, Balin asked to speak with Plaintiff. Balin asked Plaintiff if she had kissed Blanchard earlier. Plaintiff responded that she and Blanchard had not been kissing and had been merely standing outside.

65. Balin then informed Plaintiff that she was fired as he would no longer tolerate her relationship with Blanchard.

66. That same day, Balin spoke with Blanchard. He asked Blanchard if he had been having sexual intercourse with Plaintiff at the Facility. Balin told Blanchard, in sum and substance, "You're lucky to still have a job," acknowledging that he was not terminating Blanchard.

67. Even though Plaintiff, an Asian, Guyanese, and Indian woman, and Blanchard, a Caucasian man, had been dating, only Plaintiff was repeatedly humiliated, reprimanded, and terminated.

68. Upon information and belief, Blanchard is still working at the Facility.

69. Defendants allowed a discriminatory hostile work environment to materially and adversely affect Plaintiff's work environment.

70.    Defendants failed to address or remedy the hostile work environment after receiving Plaintiff's complaints.

71.    Plaintiff was treated less well or subjected to an adverse action, motivated, at least in part, by her membership in protected classes.

72.    Defendants reprimanded and terminated Plaintiff because of her race, sex, national origins and in retaliation for her complaints of a hostile work environment.

73.    Defendants would not have discriminated against Plaintiff but for her race, national origin and sex.

74.    Defendants would not have retaliated against Plaintiff but for her complaints of a hostile work environment.

75.    As a result of Defendants' actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, violated, embarrassed, and emotionally distressed.

76.    As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered, and continues to suffer, severe emotional distress and physical ailments.

77.    As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails.

78.    Plaintiff has also suffered future pecuniary losses and emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

79.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages.

80.    Defendants' conduct was intentional for the purpose of harming Plaintiff.

**AS A FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**

81.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

Complaint.

82.    The claim is authorized and instituted pursuant to the provisions of Title VII for relief based

upon the unlawful employment practices of Defendants.

83.    Plaintiff complains that Defendants violated Title VII's prohibition against discrimination

in employment based, in whole or in part, upon an employee's race (Asian), national origin

(Guyanese and Indian) and sex (female).

84.    42 U.S.C. §§ 2000e-2 states:

It shall be an unlawful employment practice for an employer (1) to fail or refuse to
hire or to discharge any individual, or otherwise to discriminate against any
individual with respect to him compensation, terms, conditions, or privileges of
employment, because of such individual's **race**, color, religion, **sex**, or **national
origin**…

85.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e

by discriminating against Plaintiff because of her race (Asian), national origin (Guyanese

and Indian) and sex (female).

**AS A SECOND CAUSE OF ACTION**
**RETALIATION UNDER TITLE VII**

86.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

Complaint.

87.    42 U.S.C. §§ 2000e-3 states:

It shall be an unlawful employment practice for an employer to discriminate against
any of his  employees or applicants for employment, for an employment agency, or
joint labor-management committee controlling apprenticeship or other training or
retraining, including on-the-job training programs, to discriminate against any
individual, or for a labor organization to discriminate against any member thereof
or applicant for membership, because he has opposed any practice made an

unlawful employment practice by the subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the subchapter.

88. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e-3 by retaliating against Plaintiff for complaining of the aforementioned violations.

## AS A THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER SECTION 1981

89. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

90. Section 1981 states in relevant part as follows:

   (a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

   (b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

91. Plaintiff was discriminated against because of her race (Asian) as provided under Section 1981 and has suffered damages as set forth herein.

## AS A FOURTH CAUSE OF ACTION
### RETALIATION UNDER SECTION 1981

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

93. Section 1981 states in relevant part as follows:

   (c) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue,

be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

(d) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

94.   Plaintiff was retaliated against because of her race (Asian) as provided under Section 1981

and has suffered damages as set forth herein.

## AS A FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

95.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

96.   Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's … race…national origin…sex … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

97.   Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her race (Asian), national origin (Guyanese) and sex (female), together with creating a hostile work environment, and retaliation.

98.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A SIXTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

99.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

11

Complaint.

100. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory

practice:

> "For any person engaged in any activity to which this section applies to
> retaliate or discriminate against any person because he has opposed any
> practices forbidden under this article."

101. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise

discriminating against the Plaintiff because of her opposition to her employer's unlawful

employment practices.

## **JURY DEMAND**

102. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant FULTON:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by Title

VII, Section 1981, and the NYSHRL, in that Defendants discriminated and retaliated

against Plaintiff on the basis of her race (Asian), national origin (Guyanese and Indian) and

sex (female);

B.   Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants'

unlawful discrimination and retaliation and to otherwise make Plaintiff whole for any

losses suffered as a result of such unlawful employment practices;

C.   Awarding Plaintiff compensatory damages for mental, emotional and physical injury,

distress, pain and suffering and injury to him reputation in an amount to be proven at trial;

D.   Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the

prosecution of the action;

F.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendants' unlawful employment practices against each of them.

Dated: New York, New York
       October 4, 2023

                                           **PHILLIPS & ASSOCIATES,**
                                           **ATTORNEYS AT LAW, PLLC**

By:    *zachy Randall*

          Zachary Randall, Esq.
          *Attorneys for Plaintiff*
          45 Broadway, Suite 430
          New York, New York 10006
          (212) 248-7431
          zrandall@tpglaws.com